**Slip Op. 13-68**

### UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| _____ | |
| FEDMET RESOURCES CORPORATION, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No.: 12-00215 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| : | |
| and : | |
| : | |
| ANH REFRACTORIES COMPANY, RESCO : | |
| PRODUCTS, INC., and MAGNESITA : | |
| REFRACTORIES COMPANY, : | |
| : | |
| Defendants. : | |
| _____: | |

### <u>OPINION</u>

**Held:** Plaintiff Fedmet Resources Corporation's motion for judgment on the agency record is denied.

Dated: May 30, 2013

<u>Morris, Manning & Martin LLP</u>, (<u>Jeffrey O. Frank</u>, <u>Brady W. Mills</u>, <u>Donald B. Cameron</u>, <u>Julie C. Mendoza</u>, <u>Mary S. Hodgins</u>, and <u>R. Will Planert</u>) for Fedmet Resources Corporation, Plaintiff.

<u>Stuart F. Delery</u>, Principal Deputy Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Antonia R. Soares</u>); Office of Chief Counsel for Import Administration, United States Department of Commerce, <u>Devin S. Sikes</u>, Of Counsel, for the United States, Defendant.

<u>Jochum, Shore & Trossevin, PC</u>, (<u>Marguerite Ellen Trossevin</u>, <u>Andrew M. Shore</u>, <u>James J. Jochum</u>, and <u>Reza Karamloo</u>) for ANH Refractories Company, Defendant-Intervenor.

<u>Doyle, Barlow & Mazard PLLC</u>, (<u>Camelia C. Mazard</u>) for Resco Products, Inc., and Magnesita Refractories Company, Defendant-Intervenors.

**TSOUCALAS, Senior Judge:**  Before the court is Fedmet Resources
Corporation's ("Fedmet") USCIT Rule 56.2 motion for judgment on the
agency record appealing the United States Department of Commerce's
("Commerce") final scope ruling regarding antidumping and
countervailing duty orders on magnesia carbon bricks ("MCBs").
Pl.'s Mot. J. Agency R. at 1–2 ("Pl.'s Br."); see Certain Magnesia
Carbon Bricks from the People's Republic of China and Mexico: Final
Scope Ruling — Fedmet Resources Corporation, Case Nos. A-201-837,
A-570-954 and C-570-955 (July 3, 2012), Pub. R. 2d 74 at 1–2
("Final Scope Ruling").[1]  Fedmet imports "Bastion"-trademarked
magnesia alumina carbon bricks ("MACBs"), which contain alumina in
addition to magnesia and carbon.  Pl.'s Br. at 6.  In its Final
Scope Ruling, Commerce determined that Fedmet's Bastion bricks are
within the scope of the antidumping and countervailing duty orders.
Final Scope Ruling at 1–2.  Fedmet argues that Commerce's ruling is
not based on substantial evidence or otherwise in accordance with
the law because MACBs have distinct physical and commercial
characteristics from in-scope MCBs, and because the International
Trade Commission ("ITC") did not consider MACBs in its injury

---

[1] Commerce implemented its new electronic filing system during
the course of the proceedings below, causing the administrative
record to be subdivided into four parts.  Unless otherwise noted,
all documents in the first, second, third, and fourth divisions of
the record hereinafter will be designated "R.1st," "R.2d," "R.3d,"
and "R.4th," respectively.  The first and second portions of the
record contain public documents, while the third and fourth
portions contain confidential documents.

determination.  Pl.'s Br. at 9-11; <u>see</u> <u>Certain Magnesia Carbon</u>
<u>Bricks from China and Mexico (Final)</u>, USITC Pub. 4182, Inv. Nos.
701-TA-468 and 731-TA-1166-1167 at 3-6 (Sept. 2010) ("<u>ITC Final</u>
<u>Determination</u>").   Commerce  and  defendant-intervenors  Resco
Products, Inc. ("Resco"), ANH Refractories Company, and Magnesita
Refractories Company (collectively, "defendant-intervenors") oppose
the motion.  <u>See</u> Commerce's Resp. Pl.'s Br. at 7-8 ("Commerce
Resp."); ANH's Resp. Pl.'s Br. at 2-5 ("ANH Resp."); Magnesita's &
Resco's Resp. Pl.'s Br. at 4-5 ("M&R Resp.").

## BACKGROUND

In September 2010, Commerce published antidumping duty orders
on MCBs from Mexico and the People's Republic of China ("PRC"), and
a separate countervailing duty order on MCBs from the PRC.  <u>Certain</u>
<u>MCBs From Mexico and the PRC: Antidumping Duty Orders</u>, 75 Fed. Reg.
57,257, at 57,257 (Sept. 20, 2010) ("<u>AD Orders</u>"); <u>Certain MCBs from</u>
<u>the PRC: Countervailing Duty Order</u>, 75 Fed. Reg. 57,442, at 57,442
(Sept. 21, 2010) ("<u>CVD Order</u>," and collectively, "the Orders").
MCBs are a type of "refractory brick" necessary for certain
applications in the steelmaking industry.  R.3d 3 Ex. 1 at 6-7.
Steelmakers use refractory bricks as lining for the inside of
ladles that transport and pour molten steel and as lining for the
inside of metallurgy furnaces.  <u>Id.</u> & Ex. 2 at 5-7.  Refractory
bricks undergo repeated exposure to extreme temperatures and
caustic substances in these roles, meaning each brick has a limited

useful life.  Id. Ex. 2 at 5-6.  Bricks used in certain locations — particularly at the "slag line and at the top of the steel melt[,] where active chemical processes are taking place and impurities and waste tend to aggregate" — experience more wear than bricks in other locations.  Id. at 5.  Consequently, producers offer a wide range of refractory bricks with finely tuned chemistries for use in different parts of the ladle or furnace. Id. at 5-6.  Steelmakers arrange these specialized bricks to achieve uniform deterioration and to lower costs, although the exact arrangement "may be quite different from shop to shop."  Id. at 5-7.

MCBs are a particularly strong variety of refractory brick composed of magnesia (MgO) and added carbon.  Id. Ex. 1 at 10-12 & Ex. 2 at 5-7.  MCBs exhibit high thermal conductivity, low porosity, and high corrosion resistance.  R.2d 18 at 5 (citing R.3d 3 Ex. 1 at 10-11).  Consequently, MCBs are used where corrosion is most severe — the slag line, the lower sidewall, the upper sidewall, the roofs of ladles, and the wall lining of high-temperature furnaces.  R.3d 3 Ex. 1 at 6-7.

The scope of the Orders covers "certain chemically-bonded . . . magnesia carbon bricks with a magnesia component of at least 70 percent magnesia . . . by weight, . . . with carbon levels ranging from trace amounts to 30 percent by weight, regardless of enhancements . . . and regardless of whether or not antioxidants

are present."  Pl.'s Br. at 6 (quoting <u>AD Orders</u>, 75 Fed. Reg. at 57,257; <u>CVD Order</u>, 75 Fed. Reg. at 57,443).

On May 3, 2011, Fedmet filed a scope ruling request to determine whether its Bastion MACB product is covered under the Orders.  <u>Certain Magnesia Carbon Bricks from the PRC and Mexico: Preliminary Scope Ruling — Fedmet Resources Corporation</u>, Case Nos. A-201-837, A-570-954, and C-570-955 at 1 (Mar. 30, 2012) ("<u>Preliminary Scope Ruling</u>").  Fedmet's Bastion bricks contain 70-90% magnesia and 3-15% carbon, levels well within the scope's technical parameters.  Pl.'s Br. at 6-7.  However, Fedmet argues that the 8-15% alumina ($Al_2O_3$) content of its Bastion bricks distinguish them from in-scope MCBs.  <u>Id.</u> at 3.  Specifically, the alumina reacts with magnesia in the brick at steelmaking temperatures to form a mineral called spinel.  <u>Id.</u>  "The spinel improves the performance of the brick in certain applications by promoting permanent expansion of the brick when it is heated, which hinders the formation of cracks, and maintains that expansion when the ladle cools between uses."  <u>Id.</u>

All parties agree there is no standard chemical definition for bricks marketed as MACBs.  <u>Final Scope Ruling</u> at 9; <u>see</u> Pl.'s Reply at 6.  Evidence on the record demonstrates that the term "MACB" can refer to bricks with more than 70% magnesia ("low-alumina bricks"), as well as bricks with less than 70% magnesia ("high-alumina

bricks").[2] Preliminary Scope Ruling Ex. 2 at 3 (online description of products marketed as MACBs with less than 70% magnesia content); R.2d 18 Ex.1 at 3 (in reference to MACBs, "carbon-bonded bricks with 50-90% [magnesia] or 40-50% [alumina] are used in the Asian region"); R.4th 2 at 3-10 (discussing industry naming conventions indicating that any brick with a majority magnesia content and added alumina and carbon can be called an MACB). Fedmet stated at oral argument that the minimum level of alumina required to form spinel is about 5%, Hr'g Tr. at 17, Fedmet Res. Corp. v. United States, No. 12-00215 (Ct. Int'l Trade Mar. 26, 2013), but there is little evidence in the administrative record to support this claim. See Preliminary Scope Ruling Ex. 1 at 100-01 (showing that bricks with 4% added alumina exhibit characteristics similar to bricks with 5-7% added alumina, but noting that bricks with 4% alumina "show[] less expansion[,] which may not be optimal" for preventing slag penetration).

In its preliminary determination, Commerce ruled that Fedmet's Bastion low-alumina MACB is within the scope of the Orders. Preliminary Scope Ruling at 1-2. Commerce first found that "[b]ased on the magnesia and carbon content alone, it appears that

---

[2] As the amount of magnesia in an MACB increases, the amount of room left for added alumina decreases. Hence, a low-alumina brick with 70% magnesia cannot contain more than 30% alumina, whereas a high-alumina brick with less than 70% magnesia can have up to nearly 50% alumina. Bricks with more alumina than magnesia are called alumina magnesia carbon bricks ("AMCBs"). R.4th 2 at 3.

Fedmet's Bastion[] [MACBs] fall within the scope of the Orders"
because they contain more than 70% magnesia and have some added
carbon. Id. at 26. Nevertheless, Commerce found "it necessary to
look beyond the language of the scope of the Orders because of the
potential ambiguity regarding whether the plain language of the
scope covers MCBs with alumina." Id. Commerce then determined
that conflicting language in the petition and in the investigations
before it and the ITC "prevent[ed] a definitive conclusion on these
sources alone." Id. at 26–27. Upon consideration of the physical
characteristics, purchaser expectations, end use, channels of
trade, price, and manner of advertising, however, Commerce
concluded that Fedmet's Bastion bricks did fall within the scope of
the Orders. Id. at 27–32. Commerce later affirmed each of these
determinations in its Final Scope Ruling. Final Scope Ruling at
1–12.

Fedmet alleges that the Final Scope Ruling is unsupported by
substantial evidence and contrary to law because the steel industry
considers MACBs to be distinct products from MCBs. Specifically,
Fedmet argues: (1) language in the petition, questionnaire
responses, and investigations indicates the scope should be
interpreted to exclude MACBs; (2) MACBs are distinguishable from
in-scope MCBs on the basis of their distinct physical properties;
and (3) Commerce acted contrary to law by interpreting the scope as
covering MACBs even though the ITC excluded them from its injury

determination.  Pl.'s Br. at 12-38.

## JURISDICTION

The court has jurisdiction over this matter pursuant to section 516(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2006).[3]

## STANDARD OF REVIEW

The court must uphold Commerce's scope determination unless it is "unsupported by substantial evidence on the record, or not otherwise in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), "taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

"[T]he plain language of the . . . order is paramount" in determining whether particular products are included in the scope. King Supply Co. v. United States, 674 F.3d 1343, 1345 (Fed. Cir. 2012); see Walgreen Co. v. United States, 620 F.3d 1350, 1354 (Fed. Cir. 2010).  Nevertheless, antidumping and countervailing duty

---

[3] All further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the United States Code, 2006 edition, and all applicable supplements thereto.

orders "sometimes employ general language," which "can render the
. . . scope ambiguous."   See Mid Continent Nail Corp. v. United
States, 35 CIT __, __, 770 F. Supp. 2d 1372, 1378 (2011); 19 C.F.R.
§ 351.225(a) (2013).   A scope ruling "is a highly fact-intensive
and case-specific determination," King Supply Co., 674 F.3d at
1345, that is "particularly within the expertise of [Commerce]."
Sandvik Steel Co. v. United States, 164 F.3d 596, 600 (Fed. Cir.
1998).   Thus, challenging a scope ruling is "a course with a high
barrier to reversal."   Nippon Steel Corp. v. United States, 458
F.3d 1345, 1352 (Fed. Cir. 2006) (quoting Mitsubishi Heavy Indus.,
Ltd. v. United States, 275 F.3d 1056, 1060 (Fed. Cir. 2001))
(internal quotation marks omitted).

## ANALYSIS

If   a   scope   contains   language   "that   is   subject   to
interpretation," Commerce will resolve the ambiguity using the
interpretive tools contained in 19 C.F.R. § 351.225.   Duferco
Steel, Inc. v. United States, 296 F.3d 1087, 1096-97 (Fed. Cir.
2007).   Fedmet concedes "the scope language alone is not
dispositive of the treatment of [MACBs] under the [O]rders." Pl.'s
Reply at 2-3; see Def.'s Br. at 13-14.

Under 19 C.F.R. § 351.225(k)(1), Commerce must first consider
"[t]he descriptions of the merchandise contained in the petition,
the initial investigation, and the determinations of [Commerce] .
. . and the [ITC]."   Id.   If those "criteria are not dispositive,"

Commerce must then consider the factors listed in paragraph (k)(2): "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." Id. § 351.225(k)(2).

## I. Commerce's 19 C.F.R. § 351.225(k)(1) Analysis

Commerce determined that "at no point in either the petition, the . . . pre-initiation stage, or the [ITC's determination] did [Resco] identify the chemical composition and technical specifications of each type of refractory brick, or expressly state that [MACBs] with a chemical composition like [Fedmet's Bastion brick] fall outside the scope." Final Scope Ruling at 5. In other words, Commerce found each reference to "MACBs" in the (k)(1) evidence to be ambiguous with respect to whether it actually identified low-alumina bricks like the Bastion brick. In light of this ambiguity, Commerce determined that the (k)(1) evidence was inconclusive and further analysis under the (k)(2) factors was necessary to determine to whether Fedmet's Bastion MACBs were within the scope. Id.; Preliminary Scope Ruling at 26–27.

Fedmet insists that Commerce's analysis is not supported by substantial evidence because MACBs are simply understood to be distinct from MCBs. See Pl.'s Br. at 13–24. Claiming that "MCBs do not contain added alumina," Fedmet argues that each reference to

MACBs in the (k)(1) evidence demonstrates that MACBs like its Bastion brick were never intended to be included in the scope. Id. at 24. For example, Fedmet notes that Resco named "magnesite, fired bauxite, magnesia dolomite and [MACBs]" as products that "are not generally substitutable [for in-scope MCBs], in a technical sense, due to varying chemical and physical properties and wear characteristics." R.3d 3 Ex. 1 at 10. Based on this statement, Fedmet concludes that Resco "express[ly]" excluded low-alumina MACBs like Fedmet's Bastion brick from the scope. Pl.'s Br. at 13-14. Fedmet also identifies a questionnaire response where Resco stated that "[t]he scope of our petition focuses only on MCB" and that "[t]hese other products [including MACBs] do not provide the same performance where MCB are used in steelmaking and steel handling applications." R.3d 3 Ex. 2 at 4. Fedmet argues this response "can only be read as confirmation that the scope language defining MCBs was adequate to clearly exclude [MACBs]." Pl.'s Br. at 16.

Fedmet's approach obscures two critical facts supported by the record that instill the term "MACB" with considerable ambiguity. First, advertisements and other record evidence indicate that the term "MACB" can refer to low-alumina bricks as well as high-alumina bricks. Preliminary Scope Ruling, at Ex. 2; R.2d 18 Ex. 1 at 3; R.4th 2 at 3-10. Second, record evidence of industry naming conventions reasonably suggests that so long as the magnesia

content of a brick with added alumina remains above 70%, it can be called either an MCB or an MACB.  R.2d 19 at Ex. 2 (advertisements describing the "Vesuvius"-trademarked product as an MCB even though it contains levels of added alumina comparable to the Bastion MACB product); Preliminary Scope Ruling at Ex. 2 (several online marketing sources describing products as MCBs even though they contain added alumina).   Consequently, without further specification, "MACB" may refer to only high-alumina MACBs in some contexts, to high- and low-alumina MACBs in others, or to MCBs with added alumina in others still.  R.2d 19 at Ex. 2; Preliminary Scope Ruling at Ex. 2.  Commerce recognized this ambiguity throughout its analysis, id. at 19, 26-27; Final Scope Ruling at 5, and reasonably concluded it could not determine whether low-alumina MACBs like Fedmet's Bastion bricks were outside the scope based on the (k)(1) evidence alone.  See ArcelorMittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 88 (Fed. Cir. 2012) ("[A]ntidumping orders should not be interpreted in a vacuum devoid of any consideration of the way the language of the order is used in the relevant industry.").

Because Resco's use of the term "MACB" does not differentiate between high-alumina and low-alumina MACBs, the petition and questionnaire response language Fedmet identifies is plainly ambiguous.   See Preliminary Scope Ruling at 26-27.   MACBs "generally" are not substitutable for MCBs, but record evidence

shows that low-alumina MACBs specifically are often substituted for MCBs due to their similar or even enhanced performance in MCB applications. Id. at Exs. 1 & 2; R.2d 19 at 8–13 & Exs. 2, 5. In a later response, Resco went on to describe how products it excluded by name from the proposed scope always fall outside of the scope's plain language, while making no similar claim elsewhere about MACBs. See R.3d 3 Ex. 3 at 1. As Commerce reasonably determined, without further chemical specification, these references to MACBs indicate that Resco may have intended to exclude only some MACBs, namely, high-alumina MACBs that can never meet the scope's plain language. See Preliminary Scope Ruling at 26–27.

Fedmet's remaining arguments are similarly unpersuasive. Fedmet avers that Commerce failed "to meaningfully address the repeated, express statements by Resco that it did not intend to cover [MACBs]." Pl.'s Br. at 18. Fedmet argues further that Commerce "chose[] to accept" Resco's explicit statements excluding MACBs from the scope, and that Commerce cannot now change its position. Pl.'s Br. at 20. Fedmet also insists that Commerce and Resco never offered a "plausible alternative interpretation" of the references to MACBs in the petition and the questionnaire responses. Pl.'s Br. at 22. In fact, Resco never expressly stated that MACBs with in-scope quantities of magnesia and carbon should be excluded from the Orders. See R.3d 3 Exs. 1–3; Preliminary

Scope Ruling at 26–27; Pl.'s Br. at 29 (quoting testimony before the ITC where counsel for Resco listed MACBs alongside other excluded bricks, but did not distinguish between high- and low-alumina MACBs).   Furthermore, Fedmet's refusal to consider the difference between high- and low-alumina varieties of MACB does not eliminate the inherent linguistic ambiguity supporting multiple reasonable interpretations of the (k)(1) evidence. See Preliminary Scope Ruling at 19, 26–27; Final Scope Ruling at 5.

As every piece of (k)(1) evidence is ambiguous as to whether it is referring to MCBs with added alumina or to all bricks with more than 50% magnesia, some carbon, and some alumina, Commerce's determination that the (k)(1) factors were not dispositive was reasonable.   See Preliminary Scope Ruling at 4–27; Final Scope Ruling at 3–5.

## II. Commerce's 19 C.F.R. § 351.225(k)(2) Analysis

Fedmet contends that "even if the [c]ourt were to find that Commerce was lawfully permitted to consider the factors in 19 C.F.R. § 351.225(k)(2), Commerce's findings under those factors are also unsupported by substantial evidence."   Pl.'s Br. at 11. Fedmet argues that Commerce made four general errors in finding that the physical characteristics of its Bastion brick are similar to those of in-scope MCBs.[4]  Pl.'s Br. at 33–38.

---

[4]  Fedmet includes two additional paragraph-long sections titled "Channels of Trade and Price and Manner of Sale and Advertising" and "Expectations of the Ultimate Purchaser and

First, Fedmet claims "Commerce's finding is contrary to the ITC's final injury determination," wherein "the [ITC] found that 'other refractory bricks, such as fired magnesite, fired bauxite, magnesia dolomite, and [MACBs] . . . do not have the same physical characteristics of MCB, are easily differentiated by price, and their uses are not perceived by the steel producers as substitutable.'" Pl.'s Br. at 33 (quoting ITC Final Determination, at I-8). Fedmet again fails to acknowledge the difference between high-alumina and low-alumina MACBs. Therefore, Fedmet has not demonstrated how this reference to MACBs definitively identifies all MACBs instead of only those high-alumina MACBs that are not interchangeable with MCBs. See id.

Second, Fedmet argues that Commerce "ignore[d] the extensive and detailed evidence" demonstrating that Bastion MACBs are distinct from in-scope MCBs due to their spinel-producing alumina content "in favor of a single article that Commerce found on the

---

Ultimate Use of the Product." Pl.'s Br. at 37-38. In those sections, Fedmet argues that Commerce improperly based its finding that "MCBs and [MACBs] are 'interchangable'" on "certain product advertisements it pulled off the internet . . . by entities who were not parties to Commerce's scope inquiry," Pl.'s Br. at 37 (quoting Final Scope Ruling at 10), and "ignore[d] detailed evidence provided by Fedmet on the different specific uses of [MACBs]." Pl.'s Br. at 38. It is not the court's role to reweigh evidence before Commerce, see Laminated Woven Sacks Comm. v. United States, 716 F. Supp. 2d 1316, 1328 (2010) (citing Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962)), and there is substantial additional evidence on the record indicating that low-alumina MACBs like Fedmet's Bastion brick are in fact interchangeable with MCBs. See Preliminary Determination Exs. 1 & 2; ITC Final Determination at I-9; R.2d 19 at Exs. 3 & 5.

internet" in a publication called <u>Millennium Steel</u>.  Pl.'s Br. at
33-34.  Fedmet challenges "the <u>bona fides</u> of this publication" and
"the credentials of the authors of this study," while
simultaneously insisting that the <u>Millennium</u> study supports its own
conclusion that MACBs are distinguishable from MCBs.  Pl.'s Br. at
34-35.

Fedmet has not demonstrated that Commerce's reliance on the
<u>Millennium</u> study was unreasonable.  The court's role is not to
reweigh evidence, <u>see</u> <u>Laminated Woven Sacks</u>, 716 F. Supp. 2d at
1328 (citing <u>Burlington Truck Lines</u>, 371 U.S. at 168), and it will
not accept Fedmet's invitation to do so here, especially in the
complete absence of evidence questioning the study's credibility.
In any event, Commerce used the <u>Millennium</u> study to "confirm[] that
MCBs with added alumina are widely used" in the same applications
and have similar physical properties as in-scope MCBs.  <u>Preliminary
Scope Ruling</u> at 28 & Ex. 1 (internal quotation marks omitted).  The
study concludes that some MACBs may offer better performance than
non-alumina MCBs in areas where MCBs are generally used.  <u>Id.</u> Ex.
1 at 101-02.  Nevertheless, according to the <u>Millennium</u> study,
"[e]xcessive expansion" caused by spinel formation in high-alumina
MACBs "may lead to development of stresses which causes structural
spalling."  <u>See</u> <u>id.</u> at 100-02.  Consequently, the <u>Millennium</u> study
is consistent with other record evidence demonstrating a physical
distinction between high-alumina and low-alumina MACBs — that

spinel formation in low-alumina MACBs provides the same physical properties that set in-scope MCBs apart from other refractory bricks, whereas spinel formation in high-alumina MACBs causes those bricks to behave like other out-of-scope refractory products.  See Preliminary Scope Ruling at 28-29.

Third, Fedmet contends that Commerce improperly "dismissed the information" contained in the Pocket Manual on the basis that it contains ambiguous language as to the chemical content of MACBs. Pl.'s Br. at 36.   Appearing directly below a table titled "Classification of the [AMCBs] according to ISO/DIS 10081-4," the Pocket Manual notes: "Regarding the magnesia side of the variation range of MgO and $Al_2O_3$ at the moment carbon-bonded bricks with 50-90% MgO or 40-50% $Al_2O_3$ are used in the Asian region.  These bricks are designated as [MACBs]."  R.2d 18 Ex. 1 at 108.  The remainder of the article makes conclusions regarding the difference between AMCBs and MCBs, without further specifying the nature of MACBs.  Id. at 108-11.  Commerce argues that it "reasonably found the reference to MACBs in the Pocket Manual ambiguous as to the chemical composition of [MACBs] because it is unclear whether the focus of the paragraph is MACBs or [AMCBs], which contain a higher alumina content than [MACBs]," and is unclear as to whether that "standard" applies outside of Asia.  Def.'s Resp. at 33.

Extending to Commerce the appropriate deference in analyzing the record before it, King Supply Co., 674 F.3d at 1348, Commerce's

treatment of this passage as ambiguous was reasonable.  In context, the Pocket Manual can reasonably be considered ambiguous as to which bricks "are designated as [MACBs]," and by whom.  See R.2d 18 Ex. 1 at 107-11.  For example, the quote does not illuminate whether a brick with 91% magnesia, 8% alumina, and 1% carbon can be considered an MACB, or whether it would be called something else outside of Asia.  See id. at 108.  Furthermore, even if Commerce determined MACBs can contain "up to 50%" alumina as Fedmet insists it should have, the Pocket Manual would not undermine the Final Determination.  The Pocket Manual simply does not identify any physical characteristics or uses that distinguish low-alumina MACBs like Fedmet's Bastion bricks from MCBs.  See id. at 107-11. Moreover, several pieces of record evidence otherwise support Commerce's finding that there is substantial physical and functional overlap between low-alumina MACBs like Fedmet's Bastion brick and in-scope MCBs.  See Preliminary Determination Exs. 1 & 2; ITC Final Determination at I-9; R.2d 19 at Exs. 3 & 5.

Lastly, Fedmet argues that Commerce improperly relied on statements in the ITCs determination indicating that carbon — not alumina — is the most important additive in preventing slag penetration in bricks with greater than 70% magnesia.  Pl.'s Br. at 46-47.  Fedmet insists that "the significance of spinel formation is that it promotes permanent expansion of the bricks, which, in turn, reduces slag penetration of the joints between the bricks."

Pl.'s Br. at 37.  However, Fedmet does not cite any record evidence
that contravenes the ITC's conclusion that "[t]he carbon in MCBs"
also "prevents liquid slag from penetrating and eroding bricks."
ITC Final Determination at I-9; see Pl.'s Br. at 46-47.  Further,
as the Millennium study noted, too much alumina can cause cracks
that lead to excessive slag penetration, meaning that the relevance
of Fedmet's claims are limited by their lack of chemical
specificity.  Preliminary Scope Ruling Ex. 1 at 100.  Put simply,
the record shows that the low alumina content in an MACB like
Fedmet's Bastion brick promotes the same physical characteristics
that set in-scope MCBs apart from other refractory products — slag
resistance and low porosity.  Id.; ITC Final Determination at I-9;
R.2d 19 Ex. 3 at 176.

    For the foregoing reasons, and on balance with Commerce's
analysis of the remaining (k)(2) factors including the manner of
advertisement and ultimate use of low-alumina MACBs, Commerce's
interpretation of the scope using the (k)(2) factors was
reasonable.  See Preliminary Scope Ruling at 27-29; Final Scope
Ruling at 8-10.

### III. ITC Injury Determination

    According to Fedmet, "[t]he antidumping statute provides that
in order to impose antidumping duties on imported merchandise,
there must be affirmative determinations by both Commerce and the
ITC."  Pl.'s Br. at 30 (citing 19 U.S.C. § 1673).  Consequently,

"the failure of the ITC to have investigated or reached an affirmative determination with respect to [MACBs] is itself sufficient grounds for holding that the scope of the Orders does not cover [MACBs]." Id. Although there is no controlling authority explicitly supporting Fedmet's legal position, see Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1075 n.3 (Fed. Cir. 2001) (declining to reach the question of whether the exclusion of a product from the ITC investigation, by itself, could establish that the product is not covered under the scope); Wheatland Tube Co. v. United States, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (stating in dicta that scope inconsistencies between the ITC's investigation and Commerce's investigation would "frustrate the purpose of antidumping laws"), no party offers an alternative interpretation of the Act. See Commerce Resp. at 23-26; ANH Resp. at 26; M&R Resp. at 8-9. Commerce and defendant-intervenors argue instead that the ITC did include an MACB in its injury determination. Commerce Resp. at 23-26; ANH Resp. at 26; M&R Resp. at 8-9.

Even assuming that Fedmet's interpretation of the law is correct, see Wheatland Tube, 161 F.3d at 1371, Commerce's determination was not contrary to law. Because there is substantial evidence on the record demonstrating that low-alumina MACBs are interchangeable with in-scope MCBs, the question of whether or not the ITC considered an MACB is irrelevant. See

Preliminary Determination Exs. 1 & 2; ITC Final Determination at I-9; R.2d 19 at Exs. 3 & 5.  Even so, the record indicates that the ITC did include a low-alumina MACB in its injury determination. See Final Scope Ruling at 5.  Specifically, as Commerce explained in the Final Scope Ruling, "the ITC included [Resco's] Maxline 10 AFX trademarked product, an MCB with added alumina, in its pricing analysis."  Id. at 5; see Pl.'s Br. at 24 ("MCBs do not contain added alumina.").

    In its Reply brief, Fedmet argues that the Maxline 10 AFX brick is not an MACB because the ITC record does not describe it as containing alumina and because Resco has not provided any evidence that the Maxline brick promotes the formation of spinel.  Pl.'s Reply at 16–18.  However, Fedmet fails to address record evidence indicating that any MCB with added alumina can be called an MACB. See R.4th 2 at 3–10 (discussing naming conventions); Preliminary Scope Ruling at Ex. 2; R.2d 19 at Ex. 2.  In the absence of a standard technical definition for MACBs based on spinel formation that readily distinguishes Resco's Maxline brick from other low-alumina MACBs, Commerce's determination was justified and in accordance with the law.  See R.4th 2 at 3–10; Preliminary Scope Ruling at Ex. 2; R.2d 19 at Ex. 2.

## CONCLUSION

    The record demonstrates a physical distinction between low-alumina MACBs and high-alumina MACBs, imparting an ambiguity into

the phrase "MACB" in each (k)(1) source.  Commerce therefore acted reasonably in moving on to the (k)(2) factors to determine whether Fedmet's Bastion brick is covered under the scope of the Orders. Although Fedmet is able to identify evidence showing that low-alumina MACBs exhibit certain characteristics as a result of spinel formation, it does not and cannot refute evidence demonstrating that these characteristics are the same as those that set in-scope MCBs apart from other refractory products, namely, slag resistance and low porosity.  As there is substantial evidence in the record showing that low-alumina MACBs like Fedmet's Bastion brick meet the scope's plain language and are interchangeable with in-scope MCBs, Fedmet's motion for judgment on the agency record must be denied. Judgment will be entered accordingly.


                                              /s/NICHOLAS TSOUCALAS
                                            **Nicholas Tsoucalas**
                                            **Senior Judge**


**Dated: May 30, 2013**
        **New York, New York**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

———————————————————

FEDMET RESOURCES CORPORATION,    :

        Plaintiff,    :

               :

    v.    :    Court No.: 12-00215

               :

UNITED STATES,    :

               :

        Defendant,    :

               :

        and    :

               :

ANH REFRACTORIES COMPANY, RESCO    :

PRODUCTS, INC., and MAGNESITA    :

REFRACTORIES COMPANY,    :

               :

        Defendants.    :

———————————————————:

**JUDGMENT**

    Upon consideration of plaintiff's motion for judgment on the agency record, defendant's and defendant-intervenors' responses, and all papers and proceedings herein, and in accordance with the court's opinion issued on this date, it is hereby

    **ORDERED** that plaintiff Fedmet Resources Corporation's motion for judgment on the agency record is DENIED; and it is further

    **ORDERED** that the United States Department of Commerce's determination in Certain Magnesia Carbon Bricks from the People's Republic of China and Mexico: Final Scope Ruling — Fedmet Resources Corporation, Case Nos. A-201-837, A-570-954 and C-570-955 (July 3, 2012) is AFFIRMED; and it is further

    **ORDERED** that this action is dismissed.

                               /s/NICHOLAS TSOUCALAS

                              **Nicholas Tsoucalas**

                              **Senior Judge**

**Dated: May 30, 2013**
      **New York, New York**